Robert L. Brace, Esq., Cal. Bar No. 122240
Michael P. Denver, Esq., Cal. Bar No. 199279
**HOLLISTER & BRACE**
P.O Box 630
Santa Barbara, Ca. 93102
Tel: (805) 963-6711

*Attorneys for Plaintiffs,*
*and all others similarly situated*

Marc P. Cook, Esq., SBN 4574
**BAILUS COOK & KELESIS, LTD**
400 South Fourth Street, Suite 300
Las Vegas, NV 89101
Tel: (702) 737-7702
*Plaintiffs Local Counsel*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| SORRELL, et al.. and SOUTHWEST EXCHANGE, INC. et al.<br><br>v.<br><br>SNELL & WILMER, LLP and PATRICK G. BYRNE | **Case No.: 08-CV-00761 RCJ-LRL**<br><br>**FINAL ORDER AND JUDGMENT OF DISMISSAL RE: WAVE V SETTLEMENT WITH DEFENDANTS SNELL & WILMER L.L.P. AND PATRICK G. BYRNE** |

On the 19th day of July, 2010, a hearing was held before this Court to determine: (1) whether the terms and conditions of the Wave V Settlement Agreement between, on the one hand, the Class Plaintiffs, the Class members and putative Class members they represent, the Receiver, Southwest Exchange, Inc., Qualified Exchange Services, Inc., the Other Receivership Entities[1], and the Settlement Class, and, on the other hand, Defendants Snell & Wilmer L.L.P. and Patrick G. Byrne (the "Settling Defendants"), a copy of which is attached hereto as Exhibit

---

[1]     The "Other Receivership Entities" are defined in the Snell Settlement agreement as follows: "all entities other than Southwest Exchange, Inc. and Qualified Exchange Services, Inc. that are or were the subject of a Receivership in the Nevada State Court Receivership Action for which Larry L. Bertsch is acting as a Court-appointed receiver in connection with the Action, the Nevada State Court Receivership Action, the Nevada Federal Court Insurance Class Action, the Internal Revenue Service 1031 Tax Deferred Exchange Litigation, and any related actions.  Without limiting the breadth of the foregoing, those entities include but are not limited to the following:  Capital Reef Management Corp., Nevada Safe Harbor, Inc., NexGen Management, LLC, International Integrated Industries, LLC, Blackstone Limited, LLC, Sirius Capital, LLC, Americade, LLC, Global Aviation Delaware, LLC, McGhan Management Corp., Global Asset Management, LP, West Vegas, LP, Bianathar, LLC, Trinity Star Ventures, LLC, Ventana Coast, LLC."

1

1    A (the "Settlement Agreement"), is fair, reasonable and adequate for the settlement of all claims

2    released therein by all releasing persons against all released persons and should be approved and

3    whether the Settlement is in compliance with Rule 23 of the Federal Rules of Civil Procedure

4    and due process, including but not limited to all laws related to proper notice to class members;

5    (2) whether to certify, for the purposes of settlement only, a Settlement Class; (3) whether the

6    Settlement Agreement is in good faith within the meaning of NRS 17.245 and is final and

7    appealable; and (4) whether Judgment should be entered dismissing the above entitled action on

8    the merits and with prejudice in favor of the Settling Defendants. The Settlement Agreement is

9    incorporated herein by reference.

10       The Court considered all matters submitted to it at the hearing and otherwise, and

11   determined that a notice of the hearing substantially in the form approved by the Court was

12   timely mailed to all members of the Settlement Class.

13       **NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND**

14   **DECREED THAT:**

15       1.    The Court has jurisdiction over the subject matter of this dispute, all

16   members of the Settlement Class, and the Settling Defendants.

17       2.    The Court finds that for purposes of settlement only the prerequisites for

18   a class action under the Federal Rules of Civil Procedure 23(a) and (b)(3) have been satisfied

19   and hereby certifies the Settlement Class as follows:

20       All persons, and any predecessors and successors, subsidiaries and affiliates, who
21       were customers of Southwest Exchange, Inc., Qualified Exchange Services, Inc.,
         Nevada National Exchange, and Arrow 1031 Exchange engaged in business as
22       Qualified Intermediaries pursuant to 26 U.S.C. § 1031, and who suffered loss or
         damages or allegedly suffered loss or damages in any way, directly or indirectly,
23       related to or arising out of (a) the failure of Southwest Exchange, Inc., Qualified
         Exchange Services, Inc., Scarlett Investments, Inc., or the Other Receivership
24       Entities, including their subsidiaries or affiliates; (b) any of the events, acts or
         conduct alleged in the Complaint in the action entitled *Sorrell v. Snell & Wilmer*
25       *L.L.P.,* Case No. 2:08-cv00761, pending in the U.S. District Court for the Southern
         District of Nevada; (c) any of the events, acts or conduct alleged in the Complaint
26       in the action entitled *SCCAA Holdings, Inc. v. Brown & Brown of California, Inc.*,"
27       Case No. 2:07-CV-00536-RCJ-LRL, pending in the U.S. District Court for the

28                                        2

District of Nevada; (d) any of the events, acts or conduct alleged in the Complaint in the action entitled *In re Receivership of Southwest Exchange, Inc. and Consolidated Litigation,* Case No. 07-A-535439-B, in the Eighth Judicial District Court, Clark County, Nevada; or (e) any of the events, acts or conduct alleged in the Complaints consolidated in the action entitled *Internal Revenue Service 1031 Tax Deferred Exchange Litigation,* Case No. 2:07-cv-01394-RCJ-LRL, pending in the U.S. District Court for the District of Nevada. This Settlement Class includes but is not limited to Jon R. Sorrell and Marie L. Sorrell, SCCAA Holdings, LLC, James R. Ciernia and Mary E. Ciernia, S&V Properties, Daniel R. Miller, Scaroni Properties, Napa Valley I, LLC, Napa Valley II, LLC, The Campbell Living Trust Dated February 10, 2003, Gerald B. Campbell Declaration of Trust Dated August 5, 1999, P&D Kelesis, LLC, Randy Char, Wayne C. Albritton, Greta Albritton, William K. Reeser, Leonard B. Shapiro, Michael Micone, Kerstan Micone, Michael McCormick, Deborah McCormick, Larry G. Wallace, Jr., 4 Ever Acres, Inc., TIC-Pratt 17, LLC, Brigite Land Management, LLC, Eric G. Tarr I Trust Dated May 4, 1990, D&D Investment Co., Harbor Investment Group, LLC, and Meldrum Family Trust Dated July 21, 1988.

3.      Notice of the Settlement Agreement was timely given to all persons entitled to notice, including the members of the Settlement Class who could be identified with reasonable effort. The form and method of notifying the members of the Settlement Class of the terms and conditions of the Settlement Agreement met the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto. Notice of the Settlement Agreement was also provided to all necessary parties pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) *et seq.*

4.      The Settlement Agreement is approved as fair, reasonable, and adequate, and the parties to the Settlement Agreement (including the Settling Defendants) and the members of the Settlement Class are directed to consummate the Settlement Agreement in accordance with its terms and provisions. The Settling Defendants are hereby directed to make the settlement payment to the Qualified Settlement Fund within the time provided therefor in the Settlement Agreement.

5.      The above entitled action is hereby dismissed with prejudice as against

3

1  the Settling Defendants and without any other person's costs, expenses or attorneys fees to be

2  paid by the Settling Defendants. All Class Plaintiffs and the Class members and putative Class

3  members they represent, the Receiver, Southwest Exchange, Inc., Qualified Exchange Services,

4  Inc., and the Other Receivership Entities are hereby permanently barred and enjoined from

5  instituting, commencing, or prosecuting any and all released claims (as set forth in the

6  Settlement Agreement) against the Settling Defendants or any of the other released parties, if

7  any, including unknown claims in any jurisdiction. The released claims (as set forth in the

8  Settlement Agreement) are hereby compromised, settled, released, discharged and dismissed on

9  the merits and with prejudice by virtue of the proceedings herein and this Final Order and

10  Judgment.

11        6.  To the fullest extent permitted by law, no person, whether or not a party

12  to any of the related actions, including, without limitation, *SCCAA Holdings, Inc. v. Brown &*

13  *Brown of California, Inc.*," Case No. 2:07-CV-00536-RCJ-LRL, pending in the U.S. District

14  Court for the District of Nevada, *In re Receivership of Southwest Exchange, Inc. and*

15  *Consolidated Litigation*, Case No. 07-A-535439-B, in the Eighth Judicial District Court, Clark

16  County, Nevada, and *Internal Revenue Service 1031 Tax Deferred Exchange Litigation*, Case

17  No. 2:07-cv-01394-RCJ-LRL, pending in the U.S. District Court for the District of Nevada.,

18  shall be permitted to bring a claim against the Settling Defendants or other persons released by

19  the Settlement Agreement, if any, in any way, in any way, directly or indirectly, related to or

20  arising out of: (a) the failure of Southwest Exchange, Inc., Qualified Exchange Services, Inc.,

21  Scarlett Investments, Inc., or the Other Receivership Entities, including their subsidiaries or

22  affiliates; (b) any of the events, acts or conduct alleged in the Complaint in the action entitled

23  *Sorrell v. Snell & Wilmer L.L.P.*, Case No. 2:08-cv00761, pending in the U.S. District Court for

24  the Southern District of Nevada; (c) any of the events, acts or conduct alleged in the Complaint

25  in the action entitled *SCCAA Holdings, Inc. v. Brown & Brown of California, Inc.*," Case No.

26  2:07-CV-00536-RCJ-LRL, pending in the U.S. District Court for the District of Nevada; (d) any

27  of the events, acts or conduct alleged in the Complaint in the action entitled *In re Receivership*

28

4

FINAL ORDER AND JUDGMENT OF DISMISSAL

*of Southwest Exchange, Inc. and Consolidated Litigation,* Case No. 07-A-535439-B, in the Eighth Judicial District Court, Clark County, Nevada; or (e) any of the events, acts or conduct alleged in the Complaints consolidated in the action entitled *Internal Revenue Service 1031 Tax Deferred Exchange Litigation,* Case No. 2:07-cv-01394-RCJ-LRL, pending in the U.S. District Court for the District of Nevada.

7. Each member of the Class is bound by the terms of the Settlement Agreement including the Released Claims set forth in the Settlement Agreement, regardless of whether any such member of the Class ever seeks or obtains by any means, including, without limitation, by submitting a proof of claim, any distribution from the Settlement payment.

8. The Settlement Agreement is a good faith settlement within the meaning of NRS 17.245. Subject to consummation of the Settlement Agreement, the Settling Defendants are discharged from any and all claims for compensation (whether by way of contribution, equitable indemnity, implied indemnity, or any other legal theory to the extent permitted by law) by any person or entity in any way based upon, arising from or referable to, the claims being released by the Settlement Agreement.

9. The Court retains jurisdiction over matters relating to the Settlement Agreement, including the administration and enforcement of the Settlement Agreement and this Final Order and Judgment, and including any application for fees and expenses from the Settlement proceeds by Plaintiffs' counsel for securing the Settlement on behalf of members of the Settlement Class and in connection with administering and distributing the Settlement proceeds to the members of the Settlement Class.

10. The Court has determined that there is no just reason for delay in entering this Final Order and Judgment and hereby enters this Final Order and Judgment With Prejudice as a final judgment pursuant to Federal Rule of Civil Procedure 54(b).

DATED: August 3, 2010.

HONORABLE ROBERT C. JONES
UNITED STATES DISTRICT JUDGE

FINAL ORDER AND JUDGMENT OF DISMISSAL

# EXHIBIT A

### *SORRELL v. SNELL & WILMER L.L.P.*
### STIPULATED CLASS ACTION SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT is made and entered into as of January 11, 2010, by and among, on the one hand, Plaintiffs Jon R. Sorrell and Marie L. Sorrell, SCCAA Holdings, LLC, James R. Ciernia and Mary E. Ciernia, S&V Properties, Daniel R. Miller, and Scaroni Properties, on their own behalf and on behalf of the putative plaintiff classes for which they act as representatives, and Larry L. Bertsch, acting as the Court-appointed Receiver for Southwest Exchange, Inc., Qualified Exchange Services, Inc., and the Other Receivership Entities (defined below in Paragraph 10), and on the other hand, Defendants Snell & Wilmer L.L.P. ("Snell") and Patrick G. Byrne (collectively, "Defendants").

### DEFINITIONS

The following terms, whether appearing with initial capital letters or not, which are in addition to other terms defined in the body of this Settlement Agreement or by the context in which they appear, have the following meanings when used in this Settlement Agreement:

1.　　　"Action" means Sorrell v. Snell & Wilmer L.L.P., Case No. 2:08-cv00761 in the U.S. District Court for the Southern District of Nevada.

2.　　　"Class Counsel" means

Robert L. Brace, Esq.
Michael P. Denver, Esq.
Hollister & Brace
1126 Santa Barbara Street, P.O. Box 630
Santa Barbara, CA 93102
Tel.: (805) 963-6711
Fax: (805) 965-0329
RLBrace@hbsb.com
mpdenver@hbsb.com

Mark P. Cook, Esq.
Bailus Cook & Kelesis, LTD.
400 So. Fourth St., Suite 300
Las Vegas, NV 89101
Tel.: (702) 737-7702
Fax: (702) 737-7712
cnklawfirm@aol.com

Mark E. Ferrario, Esq.
Brandon E. Roos, Esq.
Greenberg Traurig, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Tel.: (702) 938-6872
Fax: (702) 792-9002
ferrariom@gtlaw.com
roosb@gtlaw.com

3.    "Class Plaintiffs" means the Class Representatives in the Action – Jon R. Sorrell and Marie L. Sorrell, SCCAA Holdings, LLC, James R. Ciernia and Mary E. Ciernia, S&V Properties, Daniel R. Miller, and Scaroni Properties – and the Class members and putative Class members they represent.

4.    "Counsel for the Receiver" means

Dennis Prince, Esq.
Prince and Keating, LLP
3230 South Buffalo Drive, Suite 108
Las Vegas, NV 89117
Tel. (702) 228-6800
Fax: (702) 228-0443
dprince@princekeating.com

5.    "Court" means the Honorable Robert C. Jones of the U.S. District Court for the Southern District of Nevada, or any successor judge that may preside over this Action.

6.    "Defendants" means Snell & Wilmer L.L.P. and Patrick G. Byrne.

7.    "Internal Revenue Service 1031 Tax Deferred Exchange Litigation" means the action entitled *Internal Revenue Service 1031 Tax Deferred Exchange Litigation,* Case No. 2:07-cv-01394-RCJ-LRL, consolidated by the Panel on Multi-District Litigation and transferred to the U.S. District Court for the District of Nevada, together with all actions and proceedings joined, consolidated, or coordinated with that action.

8.    "Larry L. Bertsch" means Larry L. Bertsch, acting as the Court-appointed Receiver for Southwest Exchange, Inc., Qualified Exchange Services, Inc., and the Other Receivership Entities.

9.    "Named Plaintiffs" means the named plaintiffs and class representatives in this Action, Jon R. Sorrell and Marie L. Sorrell, SCCAA Holdings, LLC, James R. Ciernia and Mary E. Ciernia, S&V Properties, Daniel R. Miller, Scaroni Properties, and Southwest Exchange, Inc., by and through its Court-Appointed Receiver, Larry L. Bertsch.

10.    "Nevada State Court Receivership Action" means the action entitled *"In re Receivership of Southwest Exchange, Inc. and Consolidated Litigation,"* Case No. 07-A-535439-B, in the Eighth Judicial District Court, Clark County, Nevada, together with all actions and proceedings joined, consolidated, or coordinated with that action.

11.    "Other Receivership Entities" means all entities other than Southwest Exchange, Inc. and Qualified Exchange Services, Inc. that are or were the subject of a Receivership in the Nevada State Court Receivership Action for which Larry L. Bertsch is acting as a Court-appointed receiver in connection with the Action, the Nevada State Court Receivership Action, the Nevada Federal Court Insurance Class Action, the Internal Revenue Service 1031 Tax Deferred Exchange Litigation, and any related actions. Without limiting the breadth of the foregoing, those entities include but are not limited to the following: Capital Reef Management Corp., Nevada Safe Harbor, Inc., NexGen Management, LLC, International

Integrated Industries, LLC, Blackstone Limited, LLC, Sirius Capital, LLC, Americade, LLC, Global Aviation Delaware, LLC, McGhan Management Corp., Global Asset Management, LP, West Vegas, LP, Bianathar, LLC, Trinity Star Ventures, LLC, Ventana Coast, LLC.

12.    "Parties" means the Defendants and the Settling Claimants, individually and collectively, and their successors and assigns. Each of the Parties may be individually referred to herein as a "Party."

13.    "Patrick G. Byrne" means the Defendant Patrick G. Byrne and his wife Janette Bunch Byrne, and any current or former affiliates or marital communities, including but not limited to Genatric Investments, LLC, Genatric Holdings LLC, Paradise Spa LLC, Paradise Grove, LLC, The Marilyn S. Redd Trust, Marilyn S. Redd Trust For The Benefit of Janette Bunch, Janette Bunch Living Trust, Janette Bunch Irrevocable Trust, Marilyn S. Redd Trust For The Benefit of Dominique J. Bunch, Dominique J. Bunch Irrevocable Trust, and any current or former officers, directors, shareholders, subsidiaries, affiliates, partners, members, associates, agents, attorneys, assigns, beneficiaries, employees, heirs, insurers, reinsurers, predecessors, successors, staff, or other representatives of Patrick G. Byrne.

14.    "Qualified Exchange Services, Inc." means Qualified Exchange Services, Inc., together with all current and former subsidiary and affiliate entities, successors and assigns.

15.    "Receiver" means the Court-Appointed Receiver for Southwest Exchange, Inc., Qualified Exchange Services, Inc., and the Other Receivership Entities, Larry L. Bertsch, and any current and former representatives acting at his direction.

16.    "Released Claims" means any and all of the Claims released or waived pursuant to the terms of Paragraphs 3.1 through 3.5 of this Settlement Agreement.

17.    "Released Parties" means Defendant Patrick G. Byrne, Defendant Snell & Wilmer L.L.P., Named Plaintiffs Jon R. Sorrell and Marie L. Sorrell, SCCAA Holdings, LLC, James R. Ciernia and Mary E. Ciernia, S&V Properties, Daniel R. Miller, and Scaroni Properties, and the putative plaintiff classes for which they act as representatives, all members of the Settlement Class, Southwest Exchange, Inc., by and through the Receiver for Southwest Exchange, Inc., Qualified Exchange Services, Inc., by and through the Receiver for Qualified Exchange Services, Inc., the Other Receivership Entities, by and through the Receiver for the Other Receivership Entities, and for each of the foregoing all of their current and former parents, subsidiaries, affiliates, predecessors, successors, partners, members, managing members, associates, directors, officers, employees, shareholders, agents, attorneys, accountants, consultants, experts, insurers, reinsurers, spouses and marital communities, individually and collectively.

18.    "Nevada Federal Court Insurance Class Action" means the action entitled "*SCCAA Holdings, Inc. v. Brown & Brown of California, Inc.*," Case No. 2:07-CV-00536-RCJ-LRL, in the U.S. District Court for the District of Nevada.

19.    "Settlement" means the agreement between the Settling Parties, embodied in this Settlement Agreement.

20.    "Settlement Administrator" means an independent administrator selected by Class Counsel and appointed by the Court to administer the Settlement Fund. The Defendants shall have no responsibility for, and under no circumstances may be subjected to any claim based upon, the conduct of the Settlement Administrator or the distribution of any amounts pursuant to the Settlement Agreement.

21.    "Settlement Agreement" means this Settlement Agreement, including all exhibits attached to this Settlement Agreement.

22.    "Settlement Class" means all persons, and any predecessors and successors, subsidiaries and affiliates, who were customers of Southwest Exchange, Inc., Qualified Exchange Services, Inc., Nevada National Exchange, and Arrow 1031 Exchange engaged in business as Qualified Intermediaries pursuant to 26 U.S.C. § 1031, and who suffered loss or damages or allegedly suffered loss or damages in any way, directly or indirectly, related to or arising out of (a) the failure of Southwest Exchange, Inc., Qualified Exchange Services, Inc., Scarlett Investments, Inc., or the Other Receivership Entities, including their subsidiaries or affiliates; (b) any of the events, acts or conduct alleged in the Complaint in the action entitled *Sorrell v. Snell & Wilmer L.L.P.,* Case No. 2:08-cv00761, pending in the U.S. District Court for the Southern District of Nevada; (c) any of the events, acts or conduct alleged in the Complaint in the action entitled *SCCAA Holdings, Inc. v. Brown & Brown of California, Inc.,"* Case No. 2:07-CV-00536-RCJ-LRL, pending in the U.S. District Court for the District of Nevada; (d) any of the events, acts or conduct alleged in the Complaint in the action entitled *In re Receivership of Southwest Exchange, Inc. and Consolidated Litigation,* Case No. 07-A-535439-B, in the Eighth Judicial District Court, Clark County, Nevada; or (e) any of the events, acts or conduct alleged in the Complaints consolidated in the action entitled *Internal Revenue Service 1031 Tax Deferred Exchange Litigation,* Case No. 2:07-cv-01394-RCJ-LRL, pending in the U.S. District Court for the District of Nevada. This Settlement Class includes but is not limited to Jon R. Sorrell and Marie L. Sorrell, SCCAA Holdings, LLC, James R. Ciernia and Mary E. Ciernia, S&V Properties, Daniel R. Miller, Scaroni Properties, Napa Valley I, LLC, Napa Valley II, LLC, The Campbell Living Trust Dated February 10, 2003, Gerald B. Campbell Declaration of Trust Dated August 5, 1999, P&D Kelesis, LLC, Randy Char, Wayne C. Albritton, Greta Albritton, William K. Reeser, Leonard B. Shapiro, Michael Micone, Kerstan Micone, Michael McCormick, Deborah McCormick, Larry G. Wallace, Jr., 4 Ever Acres, Inc., TIC-Pratt 17, LLC, Brigite Land Management, LLC, Eric G. Tarr I Trust Dated May 4, 1990, D&D Investment Co., Harbor Investment Group, LLC, and Meldrum Family Trust Dated July 21, 1988.

23.    "Settlement Class Members" means all persons who are members of the Settlement Class except for those who validly request exclusion from the Settlement as provided in Paragraph 1.4.

24.    "Settlement Fund" means and refers to the Settlement Fund described in Paragraphs 2.1 and 6.3 and elsewhere within this Settlement Agreement into which Consideration shall be deposited by the Defendants as provided in Paragraph 2.1 of this Settlement Agreement. The Settlement Fund shall be an interest bearing or income generating account, which shall be established and maintained by the Settlement Administrator pursuant to this Settlement Agreement, and maintained under supervision of the Court. No amounts

deposited to that account by the Defendants, or earned on those amounts, shall be withdrawn from that account except pursuant to this Settlement Agreement and upon order of the Court.

25.    "Settling Claimants" means Named Plaintiffs Jon R. Sorrell and Marie L. Sorrell, SCCAA Holdings, LLC, James R. Ciernia and Mary E. Ciernia, S&V Properties, Daniel R. Miller, and Scaroni Properties, and the putative plaintiff classes for which they act as representatives, all members of the Settlement Class, Southwest Exchange, Inc., by and through the Receiver for Southwest Exchange, Inc., Qualified Exchange Services, Inc., by and through the Receiver for Qualified Exchange Services, Inc., and the Other Receivership Entities, by and through the Receiver for the Other Receivership Entities, and all of their current and former corporate, limited liability companies, or other business entity, parents, subsidiaries, affiliates, predecessors, and successors, all of the herein-described entities' respective owners, shareholders, partners, members, managing members, associates, directors, officers, employees, staff members, agents, attorneys, accountants, consultants, experts, insurers, reinsurers, spouses and marital communities, individually and collectively.

26.    "Snell" means Snell & Wilmer L.L.P and any current or former officers, directors, shareholders, subsidiaries, affiliates, partners, members, associates, agents, attorneys, assigns, beneficiaries, employees, heirs, insurers, reinsurers, predecessors, successors, staff, other professional persons, spouses, and marital communities, including but not limited to Patrick G. Byrne.

27.    "Southwest Exchange, Inc." means Southwest Exchange, Inc., also known as Southwest Exchange Corporation, together with all current and former subsidiary and affiliate entities, successors and assigns, including without limitation, Arrow 1031 Exchange, Inc., Nevada National Exchange, LLC, and Nevada Safe Harbor, Inc.

## RECITALS

WHEREAS, on June 13, 2008 Named Plaintiffs Jon R. Sorrell and Marie L. Sorrell, SCCAA Holdings, LLC, James R. Ciernia and Mary E. Ciernia, S&V Properties, Daniel R. Miller, and Scaroni Properties and Southwest Exchange, Inc. filed a class action against Defendant Snell and Patrick G. Byrne in the U.S. District Court for the Southern District of Nevada;

WHEREAS, Class Plaintiffs and Southwest Exchange, Inc. asserted claims of breach of contract, damages for dual representation of adverse interests, legal malpractice, assisting breach of fiduciary duty, breach of fiduciary duty, and negligent supervision arising out of Defendants' representation of Plaintiff Southwest Exchange, Inc.;

WHEREAS, Defendants have vigorously denied and continue to vigorously deny all of the aforementioned claims, deny any and all allegations of wrongdoing, fault, liability or damage of any kind to Class Plaintiffs, Southwest Exchange, Inc. or the Settlement Class, deny that Defendants acted improperly or wrongfully in any way, and believe that this litigation has no merit;

WHEREAS, Class Plaintiffs, Southwest Exchange, Inc., the Receiver, and Class Counsel recognize the costs and risks of prosecuting this litigation and believe that it is in their interest,

and in the interest of all members of the Settlement Class, to resolve finally and completely the pending and potential claims of the Class Plaintiffs, Southwest Exchange, Inc., the Receiver, and the Settlement Class against Defendants;

WHEREAS, Defendants have concluded that settlement is desirable in order to avoid the time and expense and the inherent uncertainties of defending protracted class action litigation and to resolve finally and completely the pending and potential claims of Class Plaintiffs, Southwest Exchange, Inc., the Receiver, and all Settlement Class Members against Defendants;

WHEREAS, arm's-length, adversarial settlement negotiations have taken place between Class Counsel and Defendants over an extended period and, as a result, this Settlement has been reached, subject to Court approval;

WHEREAS, the undersigned Parties believe that this Settlement offers significant benefits to the Settlement Class and is fair, reasonable, adequate and in the best interest of all members of the Settlement Class; and

WHEREAS the Parties agree to the certification of the Settlement Class solely for purpose of effecting the compromise and settlement of those claims on a class basis as set forth herein.

NOW, THEREFORE, the undersigned Parties stipulate and agree, subject to the approval of the Court, that all claims of the members of the Settlement Class, Southwest Exchange, Inc., and the Receiver against the Released Parties shall be finally settled, discharged and resolved on the terms and conditions set forth below in this Settlement Agreement.

## SETTLEMENT TERMS AND CONDITIONS

1. <u>**Closing Provisions**</u>

    1.1   *Closing*. Consummation of the Settlement contemplated by this Settlement Agreement, and any monies to be paid by the Defendants pursuant to Paragraph 2.1, (the "Closing") shall take place on the fifth Business Day following satisfaction of the conditions precedent set forth below in Paragraph 1.2, unless otherwise agreed to in writing by the Parties. The date upon which the Closing occurs shall be referred to herein as the "Closing Date." The releases and waivers set forth in Paragraphs 3.1 through 3.5 shall become effective upon the Closing. In addition, no Consideration shall be paid by the Defendants to the Settlement Fund as set forth in Paragraph 2.1 until the Closing Date.

    1.2   *Conditions Precedent*. The following conditions precedent shall be satisfied in full prior to the Closing:

        (a)   the Court shall have granted the proposed orders submitted to it by Class Counsel in a form to be mutually agreed upon by the Defendants and Class Counsel (such proposed orders to be submitted with a motion filed by Class Counsel as soon as practical after execution of this Agreement), preliminarily approving the Agreement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure (the "Preliminary Approval Orders"):

(i)     certifying, for settlement purposes only, the Class defined at Paragraph 1.7 of this Agreement, designating the Named Plaintiffs in the Class Actions as representatives of the Class, and designating Class Counsel as counsel for the Class;

(ii)    granting preliminary approval of the Settlement Agreement;

(iii)   directing the form, manner, and timing of providing notice of the Settlement Agreement (including but not limited to the Released Claims in Paragraphs 3.1 through 3.5 of this Agreement) to the Class in a manner that complies with the requirements of due process and federal law;

(iv)    specifying procedures for members of the Class to follow to exclude themselves from the Class and this Settlement Agreement (including but not limited to the Released Claims in Paragraph 3.1 through 3.5 of this Agreement), and the deadline for excluding themselves;

(v)     specifying procedures for members of the Class to follow in objecting to or commenting upon the Settlement Agreement, and the deadline for such comments or objections;

(vi)    setting a hearing to consider whether the Settlement Agreement should be approved and whether judgment should be entered; and

(vii)   staying all proceedings in the Court as against the Defendants, and prohibiting members of the Class from instituting or prosecuting any further actions against the Defendants asserting claims that are Released Claims under Paragraphs 3.1 through 3.5 of this Settlement Agreement, until the Court has ruled on final approval of the Settlement Agreement and entered a final judgment;

(b)     the Court shall have entered its final order, judgment and decree approving this Settlement Agreement, the Settlement Class, and the settlement approval process as fair and reasonable and otherwise in compliance with Rule 23 of the Federal Rules of Civil Procedure and due process, including but not limited to all laws related to proper notice to class members, and, furthermore, all appeals of such final order, judgment and decree shall have been resolved, made final and concluded, and the time for any such appeals shall have lapsed;

(c)     the Court shall have entered final judgments of dismissal, with prejudice, in favor of each of the Defendants, and any appeal thereof is final and the time for any appeals of such judgments shall have lapsed.  Prior to Closing, Named Plaintiffs agree to obtain the approval of the Defendants with respect to the proposed Order to Dismiss With Prejudice each Defendant in this Action, and the Named Plaintiffs agree to file the proposed Order to Dismiss With Prejudice within ten (10) days of receipt of approval from Defendants;

(d)     the Defendants and Named Plaintiffs, on behalf of themselves and the Settling Claimants, shall have validly executed this Settlement Agreement, including

without limitation the full and final releases contemplated by Paragraphs 3.1 through 3.5 and such releases shall be in full force and effect and shall not have been rescinded;

(e)     Named Plaintiffs in this Action shall have obtained on behalf of the Settling Claimants a judicial determination, pursuant to Nevada Revised Statute Section 17.245 that this Settlement Agreement was made in good faith, and such determination shall have become final and non-appealable. Named Plaintiffs in this Action shall seek to have the hearing(s) on their request for such determination held prior to, or in conjunction with, the final settlement approval hearing.

1.3     *Class Notice.* Notice of the Settlement Agreement (including but not limited to the Released Claims in Paragraphs 3.1 through 3.5) shall be provided to the Class via U.S. mail and in the form and manner and at a time that complies with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law, and as directed by the Court in the Order to be entered pursuant to the Preliminary Approval Orders. The Parties agree that the Defendants shall not be responsible for paying any costs or fees in connection with any notice, administration or other class action requirements to any Class or Class members contemplated by this Settlement Agreement or required by law. After Closing, Class Counsel may be reimbursed from the Settlement Fund to pay Class Action Notice Expenses, if approved by the Court.

1.4     *Opt-Out Procedures.* Any person or entity, acting solely on his, her or its own behalf, may exclude themselves from the Class by submitting a written request for exclusion, signed by the individual member of the Class so requesting, in accordance with the Preliminary Approval Orders. In the motion and form of order to be submitted to the Court pursuant to Paragraph 1.2(a), above, and subject to Court approval, the Parties will provide that any request for exclusion must be mailed to Class Counsel and post-marked no later than a date to be fixed by the Court, which shall provide putative members of the Class with at least thirty (30) days to do so. Any member of the Class who files a timely request for exclusion and whose request for exclusion is accepted by the Court shall not be bound by the terms of the Settlement Agreement, shall not be entitled to any of its benefits, and will not be bound by any final judgment or other order of the Court entered pursuant to this Settlement Agreement. Within ten (10) calendar days after the last date by which members of the Class must provide notification of their election to exclude themselves from the Class, Class Counsel shall serve on counsel for the Defendants and the Settling Claimants a list of all members of the Class who have requested exclusion from the Class.

1.5     *Right to Terminate In The Event of An Opt-Out.* In the event that **any** member of the Settlement Class certified in this Action opts out of this Settlement, Defendant Patrick G. Byrne and/or Defendant Snell & Wilmer L.L.P. may, in their sole discretion, terminate this Settlement Agreement by filing a "Notice of Termination of Settlement" in this Action, provided that such notice is filed within thirty (30) days after the date assigned by the Court as the deadline for opt-outs, or within fifteen (15) days after notice to Defendants of the last opt-out, whichever is later.

1.6     *Objection Procedures.* Any member of the Class who has not timely requested exclusion may appear at the final approval hearing and show cause why the Court should not approve this Settlement Agreement and dismiss this Action with prejudice as to the Defendants,

and may appear at the hearing to support or oppose Class Counsel's application for attorneys' fees, expenses and costs, provided, however that no member of the Class shall be heard unless his, her or its objection or opposition is made on or before the deadline to be fixed by the Court for members of the Class to exercise their right to exclude themselves from the Class, and copies of any written objections or briefs shall have been filed with the Court and served on counsel for the Parties on or before the date specified for the hearing. Any member of the Class who intends to object must also notify the Court and counsel for the Parties whether that member of the Class intends to appear at the hearing either with or without separate counsel ("Statement of Appearance"). All such objections shall be in a form as ordered by the Court. Unless ordered otherwise by the Court, the filing of any objection shall not extend the time within which a member of the Class may file a request for exclusion from the Class. These provisions shall be included in the form of order to be provided to the Court pursuant to Paragraph 1.2(a), above. Members of the Class who fail to file and serve timely written objections and a Statement of Appearance in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement.

      1.7    *Court Final Approval of Agreement.* If the Court finally approves the Settlement Agreement, then the Parties shall seek entry of an order and judgment in a form to be mutually agreed upon (the "Final Judgment"):

      (a)    certifying for settlement purposes only a class consisting of:

      all persons, and any predecessors and successors, subsidiaries and affiliates, who were customers of Southwest Exchange, Inc., Qualified Exchange Services, Inc., Nevada National Exchange, and Arrow 1031 Exchange engaged in business as Qualified Intermediaries pursuant to 26 U.S.C. § 1031, and who suffered loss or damages or allegedly suffered loss or damages in any way, directly or indirectly, related to or arising out of (a) the failure of Southwest Exchange, Inc., Qualified Exchange Services, Inc., Scarlett Investments, Inc., or the Other Receivership Entities, including their subsidiaries or affiliates; (b) any of the events, acts or conduct alleged in the Complaint in the action entitled *Sorrell v. Snell & Wilmer L.L.P.,* Case No. 2:08-cv00761, pending in the U.S. District Court for the Southern District of Nevada; (c) any of the events, acts or conduct alleged in the Complaint in the action entitled *SCCAA Holdings, Inc. v. Brown & Brown of California, Inc.,*" Case No. 2:07-CV-00536-RCJ-LRL, pending in the U.S. District Court for the District of Nevada; (d) any of the events, acts or conduct alleged in the Complaint in the action entitled *In re Receivership of Southwest Exchange, Inc. and Consolidated Litigation,* Case No. 07-A-535439-B, in the Eighth Judicial District Court, Clark County, Nevada; or (e) any of the events, acts or conduct alleged in the Complaints consolidated in the action entitled *Internal Revenue Service 1031 Tax Deferred Exchange Litigation,* Case No. 2:07-cv-01394-RCJ-LRL, pending in the U.S. District Court for the District of Nevada. This Settlement Class includes but is not limited to Jon R. Sorrell and Marie L. Sorrell, SCCAA Holdings, LLC, James R.

Ciernia and Mary E. Ciernia, S&V Properties, Daniel R. Miller, Scaroni Properties, Napa Valley I, LLC, Napa Valley II, LLC, The Campbell Living Trust, Gerald B. Campbell Declaration of Trust Dated August 5, 1999, P&D Kelesis, LLC, Randy Char, Wayne C. Albritton, Greta Albritton, William K. Reeser, Leonard B. Shapiro, Michael Micone, Kerstan Micone, Michael McCormick, Deborah McCormick, Larry G. Wallace, Jr., 4 Ever Acres, Inc., TIC-Pratt 17, LLC, Brigite Land Management, LLC, Eric G. Tarr I Trust Dated May 4, 1990, D&D Investment Co., Harbor Investment Group, LLC, and Meldrum Family Trust Dated July 21, 1988.

Solely for the purposes of the settlement of this Action, the Defendants agree to the certification of the Class as defined above in Paragraph 1.7(a). In the event that this Settlement Agreement is terminated in whole or part or the Closing does not occur for any reason, the Defendants do not waive and will not be deemed to have waived their rights to oppose any class in this Action. Under no circumstances may this Settlement Agreement be used as an admission or evidence concerning the appropriateness of class certification of any Class in the event that this Settlement Agreement is terminated in whole or part or the Closing does not occur for any reason. The Defendants reserve the right to further oppose class certification and/or seek decertification, either before the Court or on any appeal, should the Settlement Agreement be terminated in whole or part or should the Closing fail to occur.

(b)     determining that the Defendants and the Named Plaintiffs and members of the Class have submitted to the jurisdiction of the Court for purposes of the Settlement Agreement, and that the Court has subject matter jurisdiction to approve the Settlement Agreement as between the Defendants and the Settling Claimants;

(c)     finding for settlement purposes only that the Class satisfies the requirements for a class action under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and applicable case law, taking into account as permitted under applicable precedent the fact that the Class is being certified for settlement purposes only;

(d)     finding that the notice given pursuant to this Settlement Agreement satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process;

(e)     approving finally the Settlement Agreement and its terms as being in good faith and a fair, reasonable and adequate settlement as to the Settling Claimants, including the members of the Class, and directing the Settlement Agreement's consummation pursuant to its terms;

(f)     finding that each member of the Class who has not filed a request to opt out of the Settlement Agreement that has been accepted by the Court is bound by the terms of the Settlement Agreement including the Released Claims set forth in Paragraphs 3.1 through 3.5 of this Settlement Agreement, regardless of whether any such member of the Class ever seeks or obtains by any means, including, without limitation, by submitting

a proof of claim, any distribution from the Settlement Fund;

(g)     dismissing this Action with prejudice as to the Defendants, without attorneys' fees or costs except as provided for herein;

(h)     determining that the Settlement Agreement was made in good faith pursuant to Nevada Revised Statute Code Section 17.245, and barring claims for indemnity or contribution against the Defendants;

(i)     providing that the Court shall retain jurisdiction to enforce this Settlement Agreement as between the Defendants and the Settling Claimants until performance in full of its terms, including the administration and distribution of the Settlement Fund;

(j)     determining that there is no just reason for delay and ordering that the judgment of dismissal of the Action shall be entered without delay pursuant to Federal Rule 54(b) and that that dismissal shall be final and appealable;

(k)     incorporating the releases set forth in Paragraphs 3.1 through 3.5 of this Settlement Agreement and forever releasing and discharging the Defendants from the Released Claims; and

(l)     barring, enjoining and prohibiting any member of the Class who has not filed a request to opt out of the Settlement Agreement from instituting or prosecuting, as a class member or otherwise, any further action or proceeding, in any jurisdiction, against the Defendants asserting the Released Claims under this Settlement Agreement.

1.8     *Effect of Court Disapproval.*  If the Court for any reason determines not to approve the Settlement Agreement and enter the Final Judgment in substantially the form agreed upon by the Defendants and the Settling Claimants pursuant to this Settlement Agreement, or conditions its approval on any modification of this Settlement Agreement that is not acceptable to the Defendants and the Settling Claimants, or if the Court's approval is reversed or set aside on appeal, then this Settlement Agreement shall terminate and become null and void as to the Defendants and the Settling Claimants, except as otherwise provided in this Settlement Agreement.

1.9     *Essential Terms.*  All Parties hereby expressly agree and acknowledge that the Court's approval of the Class defined in Paragraph 1.7(a) herein constitutes an essential term of this Settlement Agreement and that the Settlement Agreement shall be null and void, at Defendant Patrick G. Byrne and/or Defendant Snell & Wilmer L.L.P.'s sole option, if the Court or any appeal fails to approve or limits in any way the scope of such class.

## 2.  Consideration

2.1     *Consideration By Defendants.*  To induce the Settling Claimants to give the releases described in Paragraphs 3.1 through 3.5 of this Settlement Agreement, and to make the representations, warranties, covenants, and other agreements set forth herein, the Defendants jointly agree to pay a total of three million, one-hundred thousand dollars ($3,100,000.00) (the

"Settlement Fund") to the Settlement Fund on behalf of the Class by the thirtieth (30) Business Day following satisfaction of the conditions precedent in Paragraph 1.2 (the Closing Date). The maximum amount of money the Defendants owe under the Settlement is the $3.1 million Settlement Fund. Any attorneys' fees and costs payable to Class Counsel shall be determined by the Court and shall be deducted from the cash payment made by the Defendants to the Settlement Fund. In no event shall the Defendants ever be responsible to pay any additional monies under this Settlement Agreement beyond those contemplated in this Paragraph, including without limitation, any monies to satisfy any attorneys' fees or costs payable to Class Counsel in connection with the Action or the settlement of the Action, or to satisfy any monies due to the Settlement Administrator or to the Receiver.

    2.2    *Consideration by Settling Claimants.* To induce the Defendants to give the Consideration described in this Settlement Agreement, and to make the representations, warranties, covenants, and other agreements set forth herein, each Settling Claimant, including each Named Plaintiff and the Class each represents, agrees to:

        (a)    give the Defendants the waivers and releases applicable to it described in Paragraphs 3.1 and 3.2 of this Settlement Agreement;

        (b)    dismiss this Action with prejudice, as set forth herein;

        (c)    cooperate with the Defendants as more fully set forth in this Settlement Agreement; and

        (d)    satisfy all other terms and conditions contemplated by this Settlement Agreement.

    2.3    *Consideration by Southwest Exchange, Inc., Qualified Exchange Services, Inc. and Other Receivership Entities.* The Court-appointed Receiver of Southwest Exchange, Inc., Qualified Exchange Services, Inc., and the Other Receivership Entities, represents and warrants that to induce the Defendants to fund the Settlement Fund pursuant to Paragraph 2.1, and grant the waivers and releases described in Paragraphs 3.3 and 3.4, and to make the representations, warranties, covenants, and other agreements set forth herein, the Receiver represents and warrants that his representatives will:

        (a)    give the Defendants the waivers and releases applicable to it described in Paragraphs 3.1 and 3.2 of this Settlement Agreement;

        (b)    dismiss this Action with prejudice, as set forth herein;

        (c)    cooperate with the Defendants and the remaining Settling Claimants as more fully set forth in this Settlement Agreement; and

        (d)    satisfy all other terms and conditions contemplated by this Settlement Agreement.

    The Receiver further represents and warrants that the Consideration given by Defendants and described in this Settlement Agreement constitutes good and valuable consideration received

on behalf of the estates of Southwest Exchange, Inc., Qualified Exchange Services, Inc., and the Other Receivership Entities. The Receiver further represents and warrants that the Consideration given by Defendants constitutes satisfaction in full from Defendants.

2.4     *Manner of Payment.*  Payment of Consideration contemplated by Paragraph 2.1 shall be made in immediately available funds and lawful currency of the United States of America to the Settlement Fund approved by the Court.

2.5     *Settlement Expenses.*  Settling Claimants shall pay their own attorneys' fees, costs and expenses of administration related to the settlement described in this Settlement Agreement, the underlying Action and any notice of or administration of the proposed settlement pursuant to a notice program approved by the Court.

3.     **Releases, Waivers and Related Agreements**

3.1     *Releases by Settling Claimants of Snell.*  Subject to the provisions of this Settlement Agreement, as of the Closing Date, the Settling Claimants (which includes the Named Plaintiffs Jon R. Sorrell and Marie L. Sorrell, SCCAA Holdings, LLC, James R. Ciernia and Mary E. Ciernia, S&V Properties, Daniel R. Miller, and Scaroni Properties, and the putative plaintiff classes for which they act as representatives, all members of the Settlement Class, Southwest Exchange, Inc., by and through the Receiver for Southwest Exchange, Inc., Qualified Exchange Services, Inc., by and through the Receiver for Qualified Exchange Services, Inc., and the Other Receivership Entities, by and through the Receiver for the Other Receivership Entities), and each of them, on behalf of themselves forever waive, release, discharge and acquit Snell, and each of them, as well as Snell's current and former officers, directors, shareholders, subsidiaries, affiliates, past affiliates, partners, members, associates, agents, attorneys, assigns, beneficiaries, employees, heirs, insurers, reinsurers, predecessors, successors, staff, other professional persons, spouses, and marital communities (the "Released Snell Defendant"), directly or indirectly, derivatively, on their own behalf, on behalf of any Class or on behalf of any other person or entity they represent, from any and all actions, causes of action, obligations, costs, damages, losses, Claims, Liabilities, restitution, and/or demands of whatsoever character, whether known or unknown, accrued or unaccrued, arising out of or relating in any way to the events alleged in this Action, including the following:

      i.  The failure of Southwest Exchange, Inc. or Qualified Exchange Services, Inc., including their subsidiaries or affiliates;

     ii.  The actual or alleged theft of property or money from Southwest Exchange or Qualified Exchange Services, Inc. by anyone, including but not limited to Donald McGhan, Nikki Pomeroy, Shirley McGhan, James McGhan, Betty Kincaid, Theodore Maloney, Marc Sperberg, Peter DeMarigny, Dee Conton, David Keys, or Barbara Seitz;

    iii.  The representation of Southwest Exchange, Inc. by Snell, and any current or former officers, directors, shareholders, subsidiaries, affiliates, partners, members, associates, agents, attorneys, assigns, beneficiaries, employees,

heirs, insurers, reinsurers, predecessors, successors, staff, other
professional persons, spouses and marital communities, including but not
limited to Patrick G. Byrne;

iv.   The representation of Donald McGhan and any of his related entities,
affiliates, or subsidiaries by Snell, and any current or former officers,
directors, shareholders, subsidiaries, affiliates, partners, members,
associates, agents, attorneys, assigns, beneficiaries, employees, heirs,
insurers, reinsurers, predecessors, successors, staff, other professional
persons, spouses and marital communities, including but not limited to
Patrick G. Byrne;

v.   The Nevada State Court Receivership Action,  the Nevada Federal Court
Insurance Class Action, or the Internal Revenue Service 1031 Tax
Deferred Exchange Litigation, any of the events, acts or conduct alleged
therein, and any matters that could have been alleged therein by Southwest
Exchange, Inc. or Qualified Exchange Services, Inc., including their
subsidiaries or affiliates.

vi.   Any Claim, act, omission, fact, matter, transaction or occurrence that was
alleged, argued or asserted, or that could have been alleged, argued or
asserted, in the Action.

Any and all actions, causes of action, obligations, costs, damages, losses, Claims, Liabilities,
restitution, and/or demands that are waived, released, discharged and acquitted by this Paragraph
are referred to herein as "Released Claims." Without limiting the generality of the forgoing,
Released Claims shall further expressly include any and all acts, omissions, facts, matters,
transactions, occurrences, and oral or written statements and representations made or allegedly
made in connection with, or directly or indirectly relating to, this Settlement Agreement or the
settlement of the Action, and any and all Claims for attorneys' fees, costs or disbursements in
connection with or related in any manner to the Action, settlement of the Action, the
administration of such settlement and/or the Released Claims, except to the extent otherwise
specified in this Settlement Agreement.

3.2   *Releases by Settling Claimants of Patrick G. Byrne.*  Subject to the provisions of
this Settlement Agreement, as of the Closing Date, the Settling Claimants (which includes the
Named Plaintiffs Jon R. Sorrell and Marie L. Sorrell, SCCAA Holdings, LLC, James R.
Ciernia and Mary E. Ciernia, S&V Properties, Daniel R. Miller, and Scaroni Properties, and
the putative plaintiff classes for which they act as representatives, all members of the
Settlement Class, Southwest Exchange, Inc., by and through the Receiver for Southwest
Exchange, Inc., Qualified Exchange Services, Inc., by and through the Receiver for Qualified
Exchange Services, Inc., and the Other Receivership Entities, by and through the Receiver for
the Other Receivership Entities), and each of them, on behalf of themselves forever waive,
release, discharge and acquit Patrick G. Byrne as well as Patrick G. Byrne's current and former
officers, directors, shareholders, subsidiaries, affiliates, past affiliates, partners, members,
associates, agents, attorneys, assigns, beneficiaries, employees, heirs, insurers, reinsurers,
predecessors, successors, staff, other professional persons, spouses, and marital communities

(the "Released Patrick G. Byrne Defendant"), directly or indirectly, derivatively, on their own behalf, on behalf of any Class or on behalf of any other person or entity they represent, from any and all actions, causes of action, obligations, costs, damages, losses, Claims, Liabilities, restitution, and/or demands of whatsoever character, whether known or unknown, accrued or unaccrued, arising out of or relating in any way to the events alleged in this Action, including the following:

     i.   The failure of Southwest Exchange, Inc. or Qualified Exchange Services, Inc., including their subsidiaries or affiliates;

     ii.   The actual or alleged theft of property or money from Southwest Exchange or Qualified Exchange Services, Inc. by anyone, including but not limited to Donald McGhan, Nikki Pomeroy, Shirley McGhan, James McGhan, Betty Kincaid, Theodore Maloney, Marc Sperberg, Peter DeMarigny, Dee Conton, David Keys, or Barbara Seitz;

     iii.   The representation of Southwest Exchange, Inc. by Snell, and any current or former officers, directors, shareholders, subsidiaries, affiliates, partners, members, associates, agents, attorneys, assigns, beneficiaries, employees, heirs, insurers, reinsurers, predecessors, successors, staff, other professional persons, spouses and marital communities, including but not limited to Patrick G. Byrne;

     iv.   The representation of Donald McGhan and any of his related entities, affiliates, or subsidiaries by Snell, and any current or former officers, directors, shareholders, subsidiaries, affiliates, partners, members, associates, agents, attorneys, assigns, beneficiaries, employees, heirs, insurers, reinsurers, predecessors, successors, staff, other professional persons, spouses and marital communities, including but not limited to Patrick G. Byrne;

     v.   The Nevada State Court Receivership Action, the Nevada Federal Court Insurance Class Action, or the Internal Revenue Service 1031 Tax Deferred Exchange Litigation, any of the events, acts or conduct alleged therein, and any matters that could have been alleged therein by Southwest Exchange, Inc. or Qualified Exchange Services, Inc., including their subsidiaries or affiliates.

     vi.   Any Claim, act, omission, fact, matter, transaction or occurrence that was alleged, argued or asserted, or that could have been alleged, argued or asserted, in the Action.

Any and all actions, causes of action, obligations, costs, damages, losses, Claims, Liabilities, restitution, and/or demands that are waived, released, discharged and acquitted by this Paragraph are referred to herein as "Released Claims." Without limiting the generality of the forgoing, Released Claims shall further expressly include any and all acts, omissions, facts, matters, transactions, occurrences, and oral or written statements and representations made or allegedly

made in connection with, or directly or indirectly relating to, this Settlement Agreement or the settlement of the Action, and any and all Claims for attorneys' fees, costs or disbursements in connection with or related in any manner to the Action, settlement of the Action, the administration of such settlement and/or the Released Claims, except to the extent otherwise specified in this Settlement Agreement.

    3.3    *Release by Snell.*  Subject to the provisions of this Settlement Agreement, as of the Closing Date, Snell, on behalf of itself forever waives, releases, discharges and acquits the Settling Claimants (which includes the Named Plaintiffs Jon R. Sorrell and Marie L. Sorrell, SCCAA Holdings, LLC, James R. Ciernia and Mary E. Ciernia, S&V Properties, Daniel R. Miller, and Scaroni Properties, and the putative plaintiff classes for which they act as representatives, all members of the Settlement Class, Southwest Exchange, Inc., by and through the Receiver for Southwest Exchange, Inc., Qualified Exchange Services, Inc., by and through the Receiver for Qualified Exchange Services, Inc., and the Other Receivership Entities, by and through the Receiver for the Other Receivership Entities), and each of them, on behalf of themselves forever waive, release, discharge and acquit the Settling Claimants as well as the Settling Claimants' officers, directors, shareholders, subsidiaries, affiliates, past affiliates, partners, members, associates, agents, attorneys, assigns, beneficiaries, employees, heirs, insurers, reinsurers, predecessors, successors, staff, other professional persons, spouses and marital communities (the "Released Settling Claimants"), directly or indirectly, derivatively, on their own behalf, on behalf of any Class or on behalf of any other person or entity they represent, from any and all actions, causes of action, obligations, costs, damages, losses, Claims, Liabilities, restitution, and/or demands of whatsoever character, whether known or unknown, accrued or unaccrued, arising out of or relating in any way to the events alleged in this Action.

    Any and all actions, causes of action, obligations, costs, damages, losses, Claims, Liabilities, restitution, and/or demands that are waived, released, discharged and acquitted by this Paragraph are referred to herein as "Released Claims." Without limiting the generality of the forgoing, Released Claims shall further expressly include any and all acts, omissions, facts, matters, transactions, occurrences, and oral or written statements and representations made or allegedly made in connection with, or directly or indirectly relating to, this Settlement Agreement or the settlement of the Action, and any and all Claims for attorneys' fees, costs or disbursements in connection with or related in any manner to the Action, settlement of the Action, the administration of such settlement and/or the Released Claims, except to the extent otherwise specified in this Settlement Agreement.

    3.4    *Release by Patrick G. Byrne.*  Subject to the provisions of this Settlement Agreement, as of the Closing Date, Patrick G. Byrne, on behalf of himself forever waives, releases, discharges and acquits the Settling Claimants (which includes the Named Plaintiffs Jon R. Sorrell and Marie L. Sorrell, SCCAA Holdings, LLC, James R. Ciernia and Mary E. Ciernia, S&V Properties, Daniel R. Miller, and Scaroni Properties, and the putative plaintiff classes for which they act as representatives, all members of the Settlement Class, Southwest Exchange, Inc., by and through the Receiver for Southwest Exchange, Inc., Qualified Exchange Services, Inc., by and through the Receiver for Qualified Exchange Services, Inc., and the Other Receivership Entities, by and through the Receiver for the Other Receivership Entities), and each of them, on behalf of himself forever waives, releases, discharges and acquits the Settling

Claimants as well as the Settling Claimants' officers, directors, shareholders, subsidiaries, affiliates, past affiliates, partners, members, associates, agents, attorneys, assigns, beneficiaries, employees, heirs, insurers, reinsurers, predecessors, successors, staff, other professional persons, spouses and marital communities (the "Released Settling Claimants"), directly or indirectly, derivatively, on their own behalf, on behalf of any Class or on behalf of any other person or entity they represent, from any and all actions, causes of action, obligations, costs, damages, losses, Claims, Liabilities, restitution, and/or demands of whatsoever character, whether known or unknown, accrued or unaccrued, arising out of or relating in any way to the events alleged in this Action.

Any and all actions, causes of action, obligations, costs, damages, losses, Claims, Liabilities, restitution, and/or demands that are waived, released, discharged and acquitted by this Paragraph are referred to herein as "Released Claims." Without limiting the generality of the forgoing, Released Claims shall further expressly include any and all acts, omissions, facts, matters, transactions, occurrences, and oral or written statements and representations made or allegedly made in connection with, or directly or indirectly relating to, this Settlement Agreement or the settlement of the Action, and any and all Claims for attorneys' fees, costs or disbursements in connection with or related in any manner to the Action, settlement of the Action, the administration of such settlement and/or the Released Claims, except to the extent otherwise specified in this Settlement Agreement.

3.5     *Additional Release Related Provisions.*

(a)     *Specific Limit of Waivers.*  Notwithstanding anything herein to the contrary, nothing in this Settlement Agreement shall constitute a limitation on, or waiver of, any right to enforce any obligation or pursue any remedy specifically provided for in this Settlement Agreement.

(b)     *No Third Party Beneficiaries of Releases.*  No parties other than the Defendants, the Released Snell Defendant and the Released Patrick G. Byrne Defendant, the Settling Claimants and the Released Settling Claimants and their respective successors and assigns shall be entitled to the benefits of, or entitled to enforce, the releases provided for in this Settlement Agreement.

(c)     *Fairness of Settlement and Releases.*  The Parties agree that this Settlement Agreement and the releases and waivers in this Settlement Agreement are fair and reasonable and adequate to provide complete satisfaction of the interests of the Settling Claimants and the Class they represent, as well as the complete satisfaction of the interests of the Defendants.

(d)     *Section 1542 Waiver.*  All Settling Claimants and Defendants expressly waive the benefits of any statutory provision or common law rule that provides, in sum or substance, that a release does not extend to Claims which the Settling Claimants or Defendants do not know or suspect to exist in their favor at the time of executing the release, which if known by them, would have materially affected their settlement with the other party. In particular, but without limitation, the Settling Claimants and Defendants, and each of them, expressly understand the provisions of California Civil Code Section

1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

All Settling Claimants and Defendants hereby agree that (i) the provisions of California Civil Code Section 1542 are hereby knowingly and voluntarily waived and relinquished, and (ii) the provisions of all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction, to the extent that they are found to be applicable herein, also are hereby knowingly and voluntarily waived and relinquished. Notwithstanding the foregoing waiver of California Civil Code Section 1542, all Settling Claimants and Defendants acknowledges that the releases set forth in this Settlement Agreement are specific to the matters set forth in the releases and are not intended to create general releases as to all claims, or potential claims, between the releasing and released Parties.

(e)     *Other Unknown Claims.* In connection with the releases contained herein, all Settling Claimants and Defendants acknowledge that they are aware that they may hereafter discover Claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the matters released herein. Nevertheless, it is the intention of all Settling Claimants and Defendants in executing this Settlement Agreement to fully, finally and forever settle and release all such matters, and all Claims relating thereto, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted), in accordance with the releases contained herein.

(f)     *Essential Terms.* All Parties hereby expressly agree and acknowledge that each of the releases contained herein constitutes an essential term of this Settlement Agreement and that the Settlement Agreement shall be null and void if any release shall not be approved or shall be deemed ineffective.

(g)     *Attorneys' Fees and Costs.* The Parties stipulate and agree that the Consideration being provided by the Defendants pursuant to Paragraph 2.1 of this Settlement Agreement is inclusive of, and constitutes full payment of, any claim for attorneys' fees and costs, specifically including the cost of any class notice and all claims administration expenses in any class action impacted by this Settlement Agreement, and the Settling Claimants and Defendants hereby waive and release any and all further Claims for attorneys' fees or costs, statutory or otherwise, related in any way to disputes pre-dating this Settlement Agreement or related to the Parties' entry into, and any required court approvals of, this Settlement Agreement.

(h)     *Negotiation of Releases.* Each of the Parties acknowledges and agrees that the various releases in this Settlement Agreement were individually negotiated with the various releasing parties under such releases and that such releases should be interpreted individually in the context of this Settlement Agreement without regard to other releases herein.

(i)     *Breaches of Agreement.* The Parties expressly understand that both direct and indirect breaches of the provisions of this Settlement Agreement are proscribed. Therefore, the Settling Claimants and Defendants covenant that each will not institute or prosecute, directly or indirectly, any action or other proceeding based in whole or in part upon their respective Claims released by this Settlement Agreement.

## 4.    Dismissals, Terminations, and Related Actions

4.1     *Dismissal of Class Action.* Class Plaintiffs and Class Counsel shall seek and obtain from the Court, as a condition precedent to Closing, a final and non-appealable Order and Judgment which shall, among other things, (a) approve this Agreement as fair, reasonable, and adequate and find that it satisfies any other conditions required by applicable law, and (b) dismiss the Action, with prejudice, as set forth above in Paragraph 1.2. The contents of each such filing shall be consistent with the terms and conditions of this Settlement Agreement.

4.2     *Tolling.* The Parties agree that the time between the date hereof and the date on which the Closing occurs, or the date on which this Settlement Agreement is terminated as provided in Paragraph 7 hereof, shall not be counted or utilized by a Party hereto in determining the date of the running of any statute of limitations or mandatory dismissal statute, or the applicability or viability of any laches defense, estoppel defense, waiver defense, and/or bar date, and/or any other similar legal or equitable defense, denial or objection, regarding the Released Claims or the Action.

4.3     *Stay of Actions Generally.* The Parties agree to seek an immediate stay of the Action pending the Closing, at which time the Action will be dismissed, except as may be necessary to consummate this Settlement Agreement; *provided, however,* that the foregoing stipulation shall not preclude Settling Claimants or their counsel from making filings required by this Settlement Agreement. In the event this Settlement Agreement is terminated pursuant to Paragraph 7 or the Closing fails to occur for any reason, all Parties will be put back into a position substantially the same as the one they were in immediately before the execution of this Settlement Agreement.

4.4     *Essential Terms.* All Parties hereby expressly agree and acknowledge that dismissal of the Action to the extent set forth in this Settlement Agreement constitutes an essential term of this Settlement Agreement and that, if the Action is not dismissed in accordance with this Settlement Agreement, the Settlement Agreement shall be null and void and of no further effect, with all rights, duties and obligations of the Parties thereafter restored as if this Settlement Agreement had never been executed.

## 5.    Representations and Warranties

5.1     *All Parties.* Each of the Named Plaintiffs represents and warrants to the Defendants, as to itself and to members of the class it represents, and both Defendants represent and warrant to the Settling Claimants, in each case as of the date hereof, and as of the Closing Date, as follows:

(a)     the Recitals of this Settlement Agreement are true and accurate in all respects;

(b)     it has the full power and authority to execute and deliver this Settlement Agreement and any other documents and agreements provided for herein to be executed and delivered by it in accordance with applicable law (the "Ancillary Documents"), on behalf of itself, its company, or Class members, and to perform all transactions, duties and obligations set forth herein and therein;

(c)     it has taken all necessary actions duly and validly to authorize the execution and delivery of this Settlement Agreement and the Ancillary Documents and the performance of the transactions contemplated hereby and thereby;

(d)     it has authorized and directed its respective attorneys to have such papers executed and to take such other action as is necessary and appropriate to effectuate the terms of this Settlement Agreement;

(e)     it has duly and validly executed and delivered this Settlement Agreement and, on the Closing Date, will have duly and validly executed and delivered the Ancillary Documents to be executed and delivered by it;

(f)     this Settlement Agreement constitutes its legal, valid and binding obligation, enforceable against it in accordance with this Settlement Agreement's terms and the respective terms of the Ancillary Documents to be executed and delivered by it, except as enforcement may be limited by applicable bankruptcy laws, insolvency, reorganization, moratorium and other laws affecting creditors' rights generally and except insofar as the availability of equitable remedies may be limited by applicable law;

(g)     it has not sold, assigned, transferred, or encumbered, or otherwise disposed of, in whole or in part, voluntarily or involuntarily, by operation of law or otherwise, any Claim of any nature whatsoever released or settled pursuant to this Settlement Agreement;

(h)     no promise, inducement or agreement not expressed herein has been made in connection with this Settlement Agreement;

(i)     to the extent that it deemed it necessary and desirable, it independently received appropriate, adequate, and competent technical, economic and legal and other advice with respect to this Settlement Agreement and the Ancillary Documents, and has not relied upon any technical, economic, legal or other advice provided to it by any other Party with respect hereto;

(j)     it is represented by competent counsel with respect to this Settlement Agreement, the Ancillary Documents and all matters covered herein or therein;

(k)     it has been fully advised by said counsel with respect to its rights and obligations and with respect to the execution of this Settlement Agreement and the Ancillary Documents; and,

(l)     the execution and delivery of this Settlement Agreement by it, and the performance of its obligations hereunder, will not (i) violate any material law, statute,

rule or regulation applicable to it, (ii) violate any order of any governmental authority applicable to it, or (iii) result in a default under any provision of any indenture, credit agreement, or other agreement relating to repayment of borrowed money or any guarantee of the foregoing.

5.2    *Defendants.*  Each of the Defendants represent and warrant as of the date hereof, and as of the Closing Date, as follows:

(a)    *Reasonably Equivalent Value.*  The Defendants have determined that the fair market value of all Consideration the Defendants are providing to the Settling Claimants and the Settlement Fund is reasonably equivalent to the fair market value of all Consideration, including releases, received by the Defendants pursuant to this Settlement Agreement from the Settling Claimants.

(b)    *Solvency.*  Before and after giving effect to the transactions contemplated by this Settlement Agreement, (i) its financial condition is and will be such that the fair value of its assets exceeds the sum of its debts, (ii) it has not incurred and will not have incurred, and does not intend to incur, debts beyond its ability to pay as they become due, and (iii) it has and will have sufficient capital to conduct its business affairs.

5.3    *Class Representatives.*  Each Named Plaintiff represents and warrants as of the date hereof, and as of the Closing Date, as follows:

(a)    *Reasonably Equivalent Value.*  He, she or it has reviewed this Settlement Agreement with Class Counsel, or other counsel and consultants and experts as he, she or it deems appropriate, and that he, she or it has determined the fair market value of all Consideration being provided to the Defendants and Released Snell Defendant and Released Patrick G. Byrne Defendant by such Settling Claimant or the Class he, she or it represents, including releases, is reasonably equivalent to the fair market value of all Consideration received therefor, for his, her or its own benefit and on behalf of the Class he, she or it represents, pursuant to this Settlement Agreement from the Defendants.

5.4    *Receiver.*  The Receiver represents and warrants as of the date hereof, and as of the Closing Date, as follows:

(a)    Scarlett Investments, Inc. is not, at the time of this Settlement Agreement, a subsidiary or affiliate of Southwest Exchange, Inc.;

(b)    Scarlett Investments, Inc. was dissolved on March 17, 2006;

(c)    To the best of the Receiver's knowledge, Scarlett Investments, Inc. has no pending, actual, future, present or past claim against Defendants;

(d)    The Receiver will not, under any circumstance, seek to assert claims, or participate in any claims, brought on behalf of Scarlett Investments, Inc. or any other parties, entities, subsidiaries, or affiliates against Defendants in this Action, the Internal Revenue Service 1031 Tax Deferred Exchange Litigation, the Nevada State Court Receivership Action, the Nevada Federal Court Insurance Class Action, or any other

action, whether filed or unfiled, prospective or actual.

    5.5    *Survival of Representations and Warranties.* The representations and warranties of the Parties set forth in Paragraphs 5.1 through 5.4 of this Agreement shall survive the Closing Date indefinitely.

## 6.    Covenants and Other Agreements

    6.1    *Allocation and Distribution of Consideration.* The Parties agree that the Class Plaintiffs and the Receiver will apportion the respective Consideration for their Class and Southwest Exchange, Inc. among their Class members and Southwest Exchange, Inc., subject to and with the Court's approval. The Defendants shall have no responsibility for, and no liability whatsoever with respect to, the allocation, and the Defendants take no position with respect to such matters. Nothing contained within this Paragraph shall constitute a condition precedent to the effectiveness of this Settlement Agreement.

    6.2    *Legal Fees.* Class Counsel may submit one or more applications to the Court for an award of attorneys' fees and litigation expenses, including but not limited to the fees of experts and consultants and the cost of any notice and all claims administration expenses ("Costs") in this Action, which shall be paid solely out of the Consideration contemplated by Paragraph 2.1 of this Settlement Agreement. Any such attorneys' fees and Costs so awarded shall, subject to Court approval, be paid to the applicant(s) from the Settlement Fund within five (5) Business Days after the Closing, or such later date as might be approved by the Court. The Defendants shall take no position on, and shall not be liable or responsible in any way for, any, the fee request made by class counsel or the fee award made by the Court. The issue of the fee award will be left to the discretion of the Court.

    6.3    *Settlement Fund.*

    (a)    *Qualified Settlement Fund.* The Parties intend that the Settlement Fund shall be established pursuant to a court order, and agree to treat the Settlement Fund as being, at all times a single "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. Further, the Parties, as appropriate, shall jointly and timely make the "relation-back election" (as provided for in Treas. Reg. § 1.468B-1(j)(2)) back to the earliest permitted date. Such election shall be made in compliance with the procedures and requirements contained in the applicable Treasury Regulations.

    (b)    *Duties of Administrator.* For the purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. § 1.468B-2(k)(3), the "administrator" shall be appointed by the Named Plaintiffs and Class Counsel (the "Settlement Administrator"). The Settlement Administrator shall timely and properly file or cause to be filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)(1) and Treas. Reg. § 1.468B-2(1)). Such returns shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund.

    (c)    *Payment of Taxes and Other Expenses.* All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund

("Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of the Settlement Fund (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) tax returns ("Tax Expenses")), shall be paid out of the Settlement Fund. Further, Taxes and Tax Expenses shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order from the Court, and the Settlement Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution any funds necessary to pay such amounts (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)). All Parties to this Settlement Agreement agree to cooperate with the Settlement Administrator, each other, and the Settlement Fund's tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph. The Parties acknowledge that the Defendants shall have no liability for payment of Taxes or Tax Expenses to the Settlement Fund.

6.4  *No Assignment of Released Claims*. Each Named Plaintiff hereby covenants and agrees, on behalf of itself and the Settling Claimants, that it has not assigned and will not assign or transfer, or purport to assign or transfer, to any person or entity, including, without limitation, any of its Affiliates or Subsidiaries, any Claim it is releasing pursuant to this Agreement.

## 7.  **Termination**

7.1  *Termination Events*. This Settlement Agreement and the transactions contemplated hereby may be terminated as follows:

(a)  *All Parties (Mutual Written Consent)*. This Settlement Agreement may be terminated at any time by the mutual written consent of the Settling Claimants and the Defendants, with approval of the Court.

(b)  *Defendants*. The Defendants, in their sole discretion, may terminate this Settlement Agreement (i)(A) pursuant to the provisions of Paragraph 1.4 herein; or (B) if the Court does not make a determination that this Settlement Agreement was entered into in good faith as provided in Paragraph 1.7(e), or such determination is reversed by any appellate court; or (ii) if there has been a material misrepresentation, a material breach of warranty, or a material failure to comply with any covenant or agreement on the part of any of the Settling Claimants with respect to their representations, warranties, covenants or agreements set forth herein, and such misrepresentation, breach, or failure to comply has not been cured in all material respects within ten (10) Business Days of receipt by the Defendants of written notice thereof; or (iii) if the Court (as defined in the Settlement Agreement) does not approve the Settlement Agreement or the definition of the Class, or such approval is reversed on appeal. Notwithstanding the foregoing, reversal accompanied by remand for additional findings or otherwise for further consideration by the trial court shall not be a basis for termination, unless and until the reversal takes effect as a final disposition.

(c)  *Named Plaintiffs*. The Named Plaintiffs or their designee(s) may terminate this Settlement Agreement prior to the Closing Date if there has been a material misrepresentation, a material breach of warranty, or a material failure to comply with any

covenant or agreement on the part of any of the Defendants with respect to their
representations, warranties or covenants set forth herein, and such misrepresentation,
breach, or failure to comply has not been cured in all material respects within ten (10)
Business Days of receipt by the Defendants of written notice thereof.

(d)     *Method of Termination.*  The terminating party must exercise the option to
withdraw from and terminate this Settlement Agreement, as provided in this Paragraph,
by providing written notice to the other Parties no later than thirty (30) days after
receiving notice of the event prompting the termination.

7.2    *Effect of Termination.*

(a)     If the Settlement Agreement is terminated pursuant to Paragraphs 1.4 or
7.1 then:

(i)     this Settlement Agreement shall be null and void and shall have no
force or effect, and no party to this Settlement Agreement shall be bound
by any of its terms, except for the terms of this Paragraph 7.2;

(ii)     this Settlement Agreement, all of its provisions, and all
negotiations, statements, and proceedings relating to it shall be without
prejudice to the rights of any Party, all of whom shall be restored to their
respective positions existing before the execution of this Settlement
Agreement;

(iii)     the Defendants and their current and former officers, directors,
shareholders, subsidiaries, affiliates, past affiliates, partners, members,
associates, agents, attorneys, assigns, beneficiaries, employees, heirs,
insurers, reinsurers, predecessors, successors, staff, other professional
persons, spouses, and marital communities expressly and affirmatively
reserve all defenses, arguments and motions as to all claims that have been
or might later be asserted in the Action, including (without limitation) any
applicable statutes of limitation and the argument that the Action may not
be litigated as a class action, that the Class should not be certified and
preemption;

(iv)     Class Plaintiffs and the other Parties and their current and former
officers, directors, shareholders, subsidiaries, affiliates, past affiliates,
partners, members, associates, agents, attorneys, assigns, beneficiaries,
employees, heirs, insurers, reinsurers, predecessors, successors, staff, other
professional persons, spouses and marital communities expressly and
affirmatively reserve all arguments in support of, all claims that have been
or might later be asserted in the Action;

(v)     neither this Settlement Agreement, nor the fact of its having been
made, shall be admissible or entered into evidence for any purpose
whatsoever; and

(vi)     any order or judgment entered in the Action after the date of execution of this Settlement Agreement, but before the Settlement Agreement is terminated, will be deemed vacated, will not be admissible in any Action, and will be without any force or effect.

(b)     If this Settlement Agreement is terminated pursuant to Paragraph 7.1(c), then the Defendants shall have all rights available to them at law or in equity, including, without limitation, the right to specific performance in addition to the rights available under Paragraph 7.2.

(c)     If this Settlement Agreement is terminated pursuant to Paragraph 7.1(b), then the Settling Claimants or their designees shall have all rights available to them at law or in equity, including, without limitation, the right to specific performance.

(d)     In addition to the provisions of clauses (a), (b) and (c) above, if this Settlement Agreement is terminated pursuant to any provision of this Settlement Agreement for any reason, then all amounts paid by the Defendants into the Settlement Fund, including accrued interest, shall be returned to the Defendants within ten (10) Business Days after such termination.

**8.**     **Notice**

8.1     *Form of Notice and Addresses.*  All notices required or permitted under this Settlement Agreement shall be in writing to the other Party and shall be delivered in person, by facsimile, by overnight mail, or by registered or certified mail, to the Parties at the following addresses:

Upon Snell at:

James P. Fogelman
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
JFogelman@gibsondunn.com

Steve Morris
Morris Peterson
900 Bank of America
300 South Fourth Street
Las Vegas, Nevada  89101
Telephone: (702) 759-8301
Facsimile: (702) 474-4547
sm@morrislawgroup.com

Upon Patrick G. Byrne at:

Dennis L. Kennedy
Bailey Kennedy
8984 Spanish Ridge Avenue
Las Vegas, NV 89148-1302
Tel.: (702) 562-8820
Fax: (702) 562-8821
dkennedy@baileykennedy.com

Upon Class Counsel at:

Robert L. Brace, Esq.
Michael P. Denver, Esq.
Hollister & Brace
1126 Santa Barbara Street, P.O. Box 630
Santa Barbara, CA 93102
Tel.: (805) 963-6711
Fax: (805) 965-0329
RLBrace@hbsb.com
mpdenver@hbsb.com

Mark P. Cook, Esq.
Bailus Cook & Kelesis, LTD.
400 So. Fourth St., Suite 300
Las Vegas, NV 89101
Tel.: (702) 737-7702
Fax: (702) 737-7712
cnklawfirm@aol.com

Mark E. Ferrario, Esq.
Brandon E. Roos, Esq.
Greenberg Traurig, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Tel.: (702) 938-6872
Fax: (702) 792-9002
ferrariom@gtlaw.com
roosb@gtlaw.com

Upon Counsel for the Receiver at:

Dennis Prince, Esq.
Prince and Keating, LLP
3230 South Buffalo Drive, Suite 108
Las Vegas, NV 89117
Tel. (702) 228-6800
Fax: (702) 228-0443
dprince@princekeating.com

8.2    *Date of Delivery.*  Any notice required or permitted under this Settlement Agreement shall: (a) if delivered in person, be deemed to have been given or made at the time of delivery; (b) if sent via certified or registered mail, be deemed to have been given or made on the date of receipt; and (c) if sent by facsimile or other similar form of communication, be deemed to have been given or made on the first Business Day following the day on which it was sent.

8.3    *Address Changes.*  The Defendants may each give written notice of a change of address in the same manner described in Paragraph 8.1, in which event all subsequent written communications shall be given to that Party at the changed address or addresses.

9.    **General Provisions**

9.1    *No Admissions.*  The Defendants, and each of them, expressly and vigorously deny any wrongdoing alleged in the Action and do not admit or concede any actual or potential

fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged against them in the Action. To the contrary, this Settlement Agreement is reached to end the expense and uncertainty of on-going litigation, notwithstanding the Defendants' view that the Action is without merit. The Parties agree that the terms of this Settlement Agreement reflect a good-faith settlement of all Parties hereto, reached voluntarily after consultation with experienced legal counsel. Neither this Settlement Agreement nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Settlement Agreement or the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of the Action, any Released Claim, or of any wrongdoing or liability of any of the Defendants or Released Snell Defendant or Released Patrick G. Byrne Defendant; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Defendants or Released Snell Defendant or Patrick G. Byrne Defendant in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; or (c) shall be offered in evidence or alleged in any pleading, directly or indirectly, by any Party. In no event shall the Settlement Agreement, any of its provisions or any negotiations, statements or court proceedings relating to them or the settlement contained herein in any way be construed as, offered as, received as, used as or deemed to be evidence of any kind in any action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this Settlement Agreement. However, the Parties to this Settlement Agreement, and any other party entitled to enforce this Settlement Agreement, may use and file this Settlement Agreement and/or orders and judgments related hereto from the Action in any other action that has been or may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good-faith settlement, judgment bar or reduction or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.2     *Amendments.*  No amendment of any provision of this Settlement Agreement shall be effective unless the same shall be in writing and signed by all of the Parties hereto. No waiver of any provision of this Settlement Agreement nor consent to any departure therefrom by any Party shall be effective unless the same shall be in writing and signed by the Defendants, with respect to any waiver or consent requested by the Settling Claimants, and by the Settling Claimants with respect to any waiver or consent requested by a Defendant. In either case, such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given; *provided, however,* that without the approval of the Court no amendment, waiver or consent shall do any of the following: (i) subject the Class Settling Claimants to any additional obligations; (ii) reduce any amount payable to any Class from the Settlement Fund by more than five thousand dollars ($5,000.00); (iii) postpone for more than ninety (90) days any date fixed for any payment in respect of any amount payable to the Settlement Fund for the benefit of any Class; or (iv) change any definition or provision of this Settlement Agreement affecting any Class.

9.3     *Confidentiality.*  Each of the Parties, and their respective representatives, agree that they shall keep and maintain this settlement and Settlement Agreement, the individual provisions hereof, the existence of this Settlement Agreement and settlement and the matters contemplated herein (collectively, "Confidential Settlement Information") in strict confidence, and shall not transmit, reveal, disclose or otherwise communicate any such information to any

third parties without the prior written consent of the other Parties before either one of the following dates, whichever occurs first:

(a)  the date on which the Receiver is required to make any court filings necessary to effectuate this Settlement Agreement; or

(b)  the date on which the filing on the application for preliminary approval of this Settlement Agreement is due.

The Parties and their counsel, and each of them, agree, to the extent permitted by law, that all agreements made and orders entered during the course of the Actions relating to the confidentiality of information, including any protective orders issued by the Court, shall survive this Settlement Agreement. The Parties agree that these confidentiality and disclosure provisions are a material part of the Settlement Agreement and that any breach of these confidentiality provisions will constitute a material breach of this Settlement Agreement. The Parties further agree to cause their current and former agents, employees, affiliates, members, officers, directors, attorneys, partners, associates, auditors, spouses, marital communities, staff, and other representatives to comply with these restrictions.

9.4    *Construction of Agreement.* The language of this Settlement Agreement shall be construed as a whole, according to its fair meaning and intendment, and not strictly for or against any Party, regardless of who drafted or was principally responsible for drafting the Settlement Agreement or any specific terms or conditions hereof. This Settlement Agreement shall be deemed to have been drafted by all Parties, and no Party shall urge otherwise.

9.5    *Cooperation.* The Parties and the Receiver (a) acknowledge that it is their intent to consummate and, where necessary, obtain judicial approval for this Settlement Agreement; and (b) agree to cooperate, from the date of the execution hereof until the Closing Date, to the extent necessary to effectuate and implement all terms and conditions of this Settlement Agreement and to exercise their reasonable efforts to accomplish the terms and conditions of this Settlement Agreement. This cooperation shall include, without limitation, each Party and the Receiver, at its own expense, taking all necessary action to satisfy as to itself the conditions precedent in Paragraph 1 pertaining to it, and, to the extent reasonably required, cooperating with each other Party and the Receiver to secure the consents and satisfy the conditions precedent enumerated in Paragraph 1.1 hereof; working together cooperatively to obtain all judicial, administrative, and regulatory approvals necessary to ensure the enforceability of the stipulations provided for in this Settlement Agreement; the execution of such instruments of conveyance, assignment, transfer and delivery, release and waiver as may be required to implement and consummate the terms of this Settlement Agreement; the provision of submissions, stipulations and other filings with Court; and the provision of such additional documents or taking of such other action as any Party or the Receiver may reasonably request to effectuate the terms of this Settlement Agreement.

9.6    *Costs.* Except as otherwise provided herein, each Party shall bear its own costs in connection with the negotiation, execution, administration, and enforcement of this Settlement Agreement.

9.7  *Counterparts.* This Settlement Agreement may be executed in multiple original and/or facsimile counterparts, each of which, when taken together, shall constitute a duplicate original, and each such duplicate original is equally admissible in evidence and shall be deemed to be one and the same instrument. With the exception of the confidentiality provisions of Paragraph 9.3, this Settlement Agreement shall not take effect until each Party has signed a counterpart.

9.8  *Enforcement of Agreement.* This Settlement Agreement may be pleaded as a full and complete defense to any action filed in which a Released Claim is asserted. The Parties, their respective counsel or any other member of the Class may file this Settlement Agreement in any proceeding brought to enforce any of its terms or provisions. The Parties further agree that their respective duties and obligations hereunder may be specifically enforced through an action seeking equitable relief or a petition for writ of mandamus by the Party or Parties for whose benefit such duty or obligation is to be performed, but no breach of any duty or obligation by any Party hereunder shall entitle any other Party to rescind or terminate this Settlement Agreement, except as provided expressly herein. In any such action, and in any action to enforce the provisions of this Settlement Agreement, the prevailing party shall recover its reasonable attorneys' fees and costs.

9.9  *Governing Law.* This Settlement Agreement, including but not limited to the releases contained herein, shall be governed by and interpreted according to the laws of the State of Nevada, without reference or regard to its choice of law or conflict of law rules and principles.

9.10  *Headings.* The headings in this Settlement Agreement are for convenience only. They in no way limit, alter or affect the meaning of this Settlement Agreement.

9.11  *Integration.* This Settlement Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof, and no representations, warranties or inducements have been made to any Party concerning this Settlement Agreement other than the representations, warranties and covenants contained and memorialized in such documents. There are no additional promises, understandings, or terms of the settlement other than those contained herein.

9.12  *Mistakes of Fact or Law.* In entering and making this Settlement Agreement, the Parties, and each of them, assume the risk of any mistake of fact or law. If the Parties, or any of them, should later discover that any fact they relied upon in entering this Settlement Agreement is not true, or that their understanding of the facts or law was incorrect, then the Parties shall not be entitled to seek rescission of this Settlement Agreement by reason thereof. This Settlement Agreement is intended to be final and binding upon the Parties regardless of any mistake of fact or law.

9.13  *Retention of Jurisdiction.* The Court shall retain jurisdiction over the settlement embodied by this Settlement Agreement to enforce the provisions of this Settlement Agreement with respect to Settling Claimants in the Action.

9.14  *Successors and Assigns.* This Settlement Agreement shall be binding upon and for the benefit of any of the Parties and their successors and assigns. Nothing in this Settlement

Agreement shall be construed or interpreted to impart any rights or obligations to any third party (other than a permitted successor or assignee bound to this Settlement Agreement), except as specifically provided herein.

**IN WITNESS WHEREOF,** the Parties and their respective counsel have executed this Settlement Agreement as of the date(s) indicated on the lines below:

For Named Plaintiffs and the Settlement Class:

Date: JAN 14, 2010

Jon R. Sorrell, on behalf of the Jon and Marie Sorrell Trust

Date: Jan 14, 2010

Marie L. Sorrell, on behalf of the Jon and Marie Sorrell Trust

Date: _____

Marsha Slotten, on behalf of SCAA Holdings, LLC

Date: _____

James R. Ciernia, on behalf of the Ciernia Revocable Trust

Date: _____

Mary E. Ciernia, on behalf of the Ciernia Revocable Trust

Date: _____

Linda Scaroni Rossi, on behalf of S&V Properties

Date: _____

Linda Scaroni Rossi, on behalf of Scaroni Properties

Date: _____

Daniel R. Miller, an individual

Page 30 of 32

Agreement shall be construed or interpreted to impart any rights or obligations to any third party (other than a permitted successor or assignee bound to this Settlement Agreement), except as specifically provided herein.

**IN WITNESS WHEREOF**, the Parties and their respective counsel have executed this Settlement Agreement as of the date(s) indicated on the lines below:

For Named Plaintiffs and the Settlement Class:

_____          Date: _____
Jon R. Sorrell, on behalf of the Jon and Marie
Sorrell Trust


_____          Date: _____
Marie L. Sorrell, on behalf of the Jon and Marie
Sorrell Trust


_____          Date: _1_/_13_/_10____
Marsha Slotten, on behalf of SCAAN
Holdings, LLC


_____          Date: _____
James R. Ciernia, on behalf of the Ciernia
Revocable Trust


_____          Date: _____
Mary E. Ciernia, on behalf of the Ciernia
Revocable Trust


_____          Date: _____
Linda Scaroni Rossi, on behalf of S&V
Properties


_____          Date: _____
Linda Scaroni Rossi, on behalf of Scaroni
Properties


_____          Date: _____
Daniel R. Miller, an individual

Agreement shall be construed or interpreted to impart any rights or obligations to any third party (other than a permitted successor or assignee bound to this Settlement Agreement), except as specifically provided herein.

**IN WITNESS WHEREOF,** the Parties and their respective counsel have executed this Settlement Agreement as of the date(s) indicated on the lines below:

For Named Plaintiffs and the Settlement Class:

Date: _____

Jon R. Sorrell, on behalf of the Jon and Marie Sorrell Trust

Date: _____

Marie L. Sorrell, on behalf of the Jon and Marie Sorrell Trust

Date: _____

Marsha Slotten, on behalf of SCAA Holdings, LLC

Date: 11/15/10

James R. Ciernia, on behalf of the Ciernia Revocable Trust

Date: 1-15-10

Mary E. Ciernia, on behalf of the Ciernia Revocable Trust

Date: _____

Linda Scaroni Rossi, on behalf of S&V Properties

Date: _____

Linda Scaroni Rossi, on behalf of Scaroni Properties

Date: _____

Daniel R. Miller, an individual

Agreement shall be construed or interpreted to impart any rights or obligations to any third party (other than a permitted successor or assignee bound to this Settlement Agreement), except as specifically provided herein.

**IN WITNESS WHEREOF**, the Parties and their respective counsel have executed this Settlement Agreement as of the date(s) indicated on the lines below:

For Named Plaintiffs and the Settlement Class:

_____        Date: _____

Jon R. Sorrell, on behalf of the Jon and Marie
Sorrell Trust


_____        Date: _____

Marie L. Sorrell, on behalf of the Jon and Marie
Sorrell Trust


_____        Date: _____

Marsha Slotten, on behalf of SCAA
Holdings, LLC


_____        Date: _____

James R. Ciernia, on behalf of the Ciernia
Revocable Trust


_____        Date: _____

Mary E. Ciernia, on behalf of the Ciernia
Revocable Trust


_____        Date: 1/14/2010

Linda Scaroni Rossi, on behalf of S&V
Properties


_____        Date: 1/14/2010

Linda Scaroni Rossi, on behalf of Scaroni
Properties


_____        Date: _____

Daniel R. Miller, an individual

Agreement shall be construed or interpreted to impart any rights or obligations to any third party (other than a permitted successor or assignee bound to this Settlement Agreement), except as specifically provided herein.

    **IN WITNESS WHEREOF,** the Parties and their respective counsel have executed this Settlement Agreement as of the date(s) indicated on the lines below:

For Named Plaintiffs and the Settlement Class:

_____      Date: _____
Jon R. Sorrell, on behalf of the Jon and Marie
Sorrell Trust

_____      Date: _____
Marie L. Sorrell, on behalf of the Jon and Marie
Sorrell Trust

_____      Date: _____
Marsha Slotten, on behalf of SCAA
Holdings, LLC

_____      Date: _____
James R. Ciernia, on behalf of the Ciernia
Revocable Trust

_____      Date: _____
Mary E. Ciernia, on behalf of the Ciernia
Revocable Trust

_____      Date: _____
Linda Scaroni Rossi, on behalf of S&V
Properties

_____      Date: _____
Linda Scaroni Rossi, on behalf of Scaroni
Properties

_____      Date: _1-13-10_____
Daniel R. Miller, an individual

_____   Date: _____
Larry L. Bertsch, Court-Appointed Receiver
on behalf of Qualified Exchange Services, Inc.


_____   Date: _____
Larry L. Bertsch, Court-Appointed Receiver
on behalf of All Other Entities in Receivership
in Case No. 07-A-535439-B and consolidated
actions as of January 11, 2010


For Plaintiff Southwest Exchange, Inc.:


_____   Date: _____
Larry L. Bertsch, Court-Appointed Receiver
on behalf of Southwest Exchange, Inc.


Approved as to Form by Counsel for the Receiver:


_____   Date: 1-21-10
Dennis Prince, of Prince and Keating, LLP


Approved as to Form by Class Counsel:


_____   Date: 1-21-10
Mark E. Ferrario, of Greenberg Traurig, LLP


_____   Date: _____
Mark R. Cook, of Bailus Cook &
Kelesis, LTD


_____   Date: 7/15/10
Robert L. Brace, of Hollister & Brace


For Defendant Patrick G. Byrne:

Larry L. Bertsch, Court-Appointed Receiver
on behalf of Qualified Exchange Services, Inc.

Date: 2/3/2010

Larry L. Bertsch, Court-Appointed Receiver
on behalf of All Other Entities in Receivership
in Case No. 07-A-535439-B and consolidated
actions as of January 11, 2010

Date: 2/3/2010

For Plaintiff Southwest Exchange, Inc.:

Larry L. Bertsch, Court-Appointed Receiver
on behalf of Southwest Exchange, Inc.

Date: 2/3/2010

Approved as to Form by Counsel for the Receiver:

Dennis Prince, of Prince and Keating, LLP

Date: _____

Approved as to Form by Class Counsel:

Mark E. Ferrario, of Greenberg Traurig, LLP

Date: _____

Mark T. Cook, of Haltus Cook &
Kelesis, LTD

Date: _____

Robert L. Brace, of Hollister & Brace

Date: 1/15/10

For Defendant Patrick G. Byrne:

Page 31 of 32

Date: 1/22/2010

Patrick G. Byrne

Approved as to Form by Patrick G. Byrne's Counsel:

Date: _____

Dennis L. Kennedy, of Bailey Kennedy

For Defendant Snell & Wilmer L.L.P.:

Date: _____

James Condo, on behalf of
Snell & Wilmer L.L.P.

Approved as to Form by Snell & Wilmer L.L.P.'s Counsel:

Date: _____

James P. Fogelman, of Gibson,
Dunn & Crutcher, LLP

100745813_1 (2).DOC

_____                    Date: _____
Patrick G. Byrne


Approved as to Form by Patrick G. Byrne's Counsel:


_____                    Date: _January 25TH/2010_
Dennis L. Kennedy, of Bailey Kennedy




For Defendant Snell & Wilmer L.L.P.:


_____                    Date: _____
James Condo, on behalf of
Snell & Wilmer L.L.P.


Approved as to Form by Snell & Wilmer L.L.P.'s Counsel:


_____                    Date: _____
James P. Fogelman, of Gibson,
Dunn & Crutcher, LLP

100745813_1 (2).DOC


Page 32 of 32

_____          Date: _____
Patrick G. Byrne


Approved as to Form by Patrick G. Byrne's Counsel:


_____          Date: _____
Dennis L. Kennedy, of Bailey Kennedy


For Defendant Snell & Wilmer L.L.P.:

*Snell's Wilmer L.L.P*
*By James R Condo, Partner*
_____          Date: __*Jan 21, 2010*__
James Condo, on behalf of
Snell & Wilmer L.L.P.


Approved as to Form by Snell & Wilmer L.L.P.'s Counsel:


_____          Date: _____
James P. Fogelman, of Gibson,
Dunn & Crutcher, LLP

100745813_1 (2).DOC


Page 32 of 32

_____          Date: _____
Patrick G. Byrne


Approved as to Form by Patrick G. Byrne's Counsel:


_____          Date: _____
Dennis L. Kennedy, of Bailey Kennedy




For Defendant Snell & Wilmer L.L.P.:


_____          Date: _____
James Condo, on behalf of
Snell & Wilmer L.L.P.


Approved as to Form by Snell & Wilmer L.L.P.'s Counsel:


_____          Date: $2-5-10$ _____
James P. Fogelman, of Gibson,
Dunn & Crutcher, LLP

100745813_1 (2).DOC